# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**THOMAS VITRANO**
            **Petitioner-defendant,**


    **v.**                                    **Case No. 15-C-0292**
                                                       **Criminal Case No. 09-CR-140**

**UNITED STATES OF AMERICA**
            **Respondent-plaintiff.**

---

## RULE 4 ORDER

A jury convicted petitioner Thomas Vitrano of making a false declaration to a court, 18 U.S.C. § 1623(a), attempting to corruptly influence a court proceeding, 18 U.S.C. § 1512(c)(2), and threatening a witness, 18 U.S.C. § 1512(b)(1), and I sentenced him 120 months in prison, with 72 months running concurrently and 48 months consecutively to an existing sentence. Petitioner appealed, challenging one of my evidentiary rulings at trial, but the Seventh Circuit affirmed.  United States v. Vitrano, 747 F.3d 922 (7th Cir. 2014).  Petitioner now moves to vacate his convictions and sentence pursuant to 28 U.S.C. § 2255.

Section 2255 provides a basis for attacking a federal sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, the district court must conduct a preliminary review of a § 2255 motion:

> If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.  If the motion

is not dismissed, the judge must order the United States Attorney to file an answer, motion or other response . . . .

## I. FACTS AND BACKGROUND

The government alleged that petitioner, while serving a 30 year prison sentence for unlawful firearm possession pursuant to the Armed Career Criminal Act ("ACCA"), filed a fraudulent motion under 28 U.S.C. § 2255 attacking the ACCA sentence, then attempted to threaten or coerce a witness in the case. The ACCA requires a sentence of 15 years to life if the defendant has three predicate convictions for a "serious drug offense" or a "violent felony." 18 U.S.C. § 924(e). However, under 18 U.S.C. § 921(a)(20), any conviction for which the defendant has had civil rights restored does not count, unless the restoration expressly provided that the defendant may not possess firearms. In petitioner's firearm possession case, the parties disputed whether petitioner had his civil rights restored in one of his putative ACCA predicates, a 1977 recklessly endangering safety conviction. Petitioner could not locate a copy of his "discharge certificate" from the 1977 case, so the parties obtained five sample discharge orders from the Wisconsin Historical Society. The district judge concluded that any of these sample orders would have sufficed to effect a restoration, but on the government's appeal the Seventh Circuit held that only one of the five would have restored petitioner's civil rights and thus needed an express firearms reservation. And because petitioner could not establish by a preponderance of the evidence that he had received that type of order (rather than one of the other four types), the 1977 conviction counted. United States v. Vitrano, 405 F.3d 506, 508-10 (7th Cir. 2005). On remand, the district judge sentenced petitioner to 30 years in prison under the ACCA. United States v. Vitrano, 495 F.3d 387 (7th Cir. 2007).

In March 2008, petitioner filed a § 2255 motion attacking the ACCA sentence, in which

he claimed that his friend, Scott Valona, located a discharge certificate containing the restoration language required by the Seventh Circuit.  The government concluded that the certificate was a fake and obtained an indictment charging petitioner with making a false declaration to the court (by claiming that Valona found the certificate) and with attempting to corruptly influence the § 2255 proceeding (by filing the fake certificate).[1]  The government also charged petitioner with attempting to corruptly influence Valona's testimony before the grand jury investigating the alleged fraud.

The case proceeded to trial.  The government introduced the § 2255 motion, which bore petitioner's signature under penalty of perjury.  Attached to the motion were copies of the discharge certificate and an affidavit signed by Valona in which Valona claimed that he found the certificate while looking through petitioner's files.  ATF Agent John Adamson, tasked with investigating the authenticity of the certificate, testified that he provided the "originals" of the certificate, along with historical samples of such certificates, to the state crime lab.  A forensic document examiner from the crime lab testified that petitioner's certificates were not genuine, and state Department of Corrections employees testified that such a form would not have been issued in petitioner's circumstances.  Valona testified that, contrary to the story in his affidavit, he did not find the certificate among petitioner's business files; rather, petitioner sent it to him.[2]

---

[1]The § 2255 motion attacking the ACCA sentence was ultimately dismissed, and petitioner was denied permission to amend the motion to include an argument that his prior convictions no longer qualified as predicates under Chambers v. United States, 555 U.S. 122 (2009) and Begay v. United States, 553 U.S. 137 (2008).  See Vitrano v. United States, 721 F.3d 802 (7th Cir. 2013).

[2]The government also called petitioner's friend Peggy Schulz, who testified that petitioner sent her a discharge certificate and asked her to forward it to his lawyer.  She denied creating the certificates or knowing who did.

He further testified that, after the government began investigating the matter, petitioner sent him various letters, warning him not to "flip the script" and that "no one likes a rat in the joint." The government also played for the jury recorded phone calls between Valona and petitioner. The jury convicted petitioner of all three counts.

Prior to sentencing, petitioner's trial counsel withdrew and successor counsel was appointed. Successor counsel filed various objections to the sentencing guideline calculations in the pre-sentence report ("PSR"), which I generally rejected, adopting a range of 130-162 months. On consideration of the 18 U.S.C. § 3553(a) factors, I imposed a sentence of 120 months, running partially concurrent with the ACCA sentence. Successor counsel filed a notice of appeal, challenging my evidentiary ruling regarding the recorded phone calls. The Seventh Circuit rejected the argument and affirmed.

## II. DISCUSSION

In the instant § 2255 motion, petitioner alleges that his trial and appellate lawyers provided ineffective assistance of counsel in six respects,[3] and that the PSR incorrectly calculated his sentencing guideline range. Claims of ineffective assistance of counsel may be raised for the first time under § 2255, Massaro v. United States, 538 U.S. 500, 509 (2003), but the PSR/sentencing claim is procedurally defaulted because petitioner did not raise it on direct appeal, meaning it can be raised now only if petitioner can show "cause" for the default and actual "prejudice" based on the alleged error. See United States v. Frady, 456 U.S. 152, 167-168 (1982). Petitioner's final ineffective assistance claim faults his lawyer for failing to raise the sentencing issues; ineffective assistance may constitute cause for a procedural

---

[3]The motion has two claims numbered "ground four." In this decision, I re-number the second "ground four" as number five and "ground five" as number six.

default, and ineffective assistance claims require a similar showing of prejudice. See Freeman v. United States, 975 F.2d 310, 314 (7th Cir. 1992), overruled in part on other grounds, Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994). I will therefore analyze the sentencing claim under the ineffective assistance standard.

## A. Ineffective Assistance Standard

In order to establish ineffective assistance of counsel, a defendant must show two things. First, he must show that his lawyer's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, he must show that the deficient performance prejudiced his defense. This requires showing that counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Strickland v. Washington, 466 U.S. 668, 687 (1984).

With regard to the performance prong, the defendant must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. The court's scrutiny of counsel's performance must be conducted with a high degree of deference and without the distorting effects of hindsight. As to the prejudice prong, the defendant must show a "reasonable probability" that, but for counsel's mistakes, the result would have been different. A reasonable probability means a probability sufficient to undermine confidence in the outcome of the trial. E.g., Dugan v. United States, 18 F.3d 460, 463-64 (7th Cir. 1994).

**B.     Petitioner's Claims**

**1.     Treatment of Valona**

Petitioner first claims that his trial counsel failed to object to the "purposeful parading" of prosecution witness Valona to the witness stand by ATF Agent Adamson, making it look like Valona needed to be protected from petitioner because petitioner was dangerous.  He also complains that trial counsel failed to object to Agent Adamson "high fiveing" Valona after his testimony and in the presence of the jury, making it appear that Valona did a good job and prejudicing the defense.

Petitioner cites nothing in the record – and offers no evidence beyond his own bare assertion – showing that these events happened, and I have no recollection of their occurrence.  Nor does petitioner cite any authority holding that such conduct, if it did occur, causes prejudice.  Cf. United States v. Rodriguez, 581 F.3d 775, 797 (8th Cir. 2009) (citing United States v. Rude, 88 F.3d 1538, 1549 (9th Cir. 1996) (finding no authority for the proposition that it is improper for a prosecutor, without more, simply to shake hands with a witness upon the close of his testimony in the jury's presence)); United States v. Tocco, 200 F.3d 401, 424 (6th Cir. 2000) (affirming denial of mistrial where FBI agents escorted witness into courtroom and all the way to the witness chair).

**2.     Failure to Call Witnesses**

Second, petitioner contends that his trial counsel failed to interview prospective expert witnesses or any other witnesses who could have testified on petitioner's behalf and failed to call any witnesses for the defense at trial.  Petitioner provides no specifics in support of this claim.  Absent some indication as to who these prospective witnesses are and what they would

6

have said, petitioner cannot show prejudice.  <u>See</u> <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnote omitted); <u>see also</u> <u>George v. Smith</u>, 586 F.3d 479, 486 (7th Cir. 2009) (holding that a habeas petitioner must make a showing that a witness was available to testify in his defense and that there is a reasonable probability the witnesses's testimony would have made a difference in the outcome); <u>United States v. Rodriguez</u>, 53 F.3d 1439, 1449 (7th Cir. 1995) ("We have held that a defendant has a burden of supplying sufficiently precise information, of the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing whether such information . . . would have produced a different result.") (internal quote marks omitted).  Petitioner also complains that trial counsel failed to use the recording of prosecution witness Schulz's interrogation by Agent Adamson, but he does not specify what in the recording would have been useful during cross-examination.[4]

Petitioner further claims that his lawyer failed to challenge the "reasonable doubt" of the testimony of witness Valona, who originally lied and signed a sworn affidavit under penalty of perjury saying that he (Valona) found the fake document in petitioner's business files but later recanted.  During his testimony, Valona admitted that he lied in the affidavit (Trial Tr. at 204), and petitioner's counsel vigorously cross-examined Valona, including regarding Valona's motivation to testify as the government wanted (<u>id.</u> at 281).  Deciding witness credibility is the

---

[4]Trial counsel did cross-examine Schulz regarding her prior statements to Adamson and Detective Smith.  (Trial Tr. at 143-150.)

jury's job, see, e.g., United States v. Green, 648 F.3d 569, 578 (7th Cir. 2011), and the jury apparently believed Valona in this case when he decided to "come clean" regarding his role, notwithstanding his previous untruthfulness.[5]

### 3. Voice Recognition

Third, petitioner argues that his lawyer failed to object to Valona's testimony identifying petitioner's voice in the recorded phone calls, as Valona is not an expert in voice recognition. Expert testimony is not needed for voice authentication. United States v. Mendiola, 707 F.3d 735, 739 (7th Cir. 2013). Valona testified that he was friends with petitioner for 17 years (Trial Tr. at 194), which gave him ample opportunity to become familiar with petitioner's voice. There was no basis for counsel to object.

Petitioner also claims that trial counsel failed to adequately object to the testimony from a Bureau of Prisons employee authenticating the recordings. Trial counsel did object (Trial Tr. at 183-86), and appellate counsel raised the issue (unsuccessfully) on appeal. Vitrano, 747 F.3d at 924-25. Petitioner provides no basis for revisiting the issue now. See Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005) (holding that the law of the case doctrine generally prevents re-litigation under § 2255 of an issue decided on direct appeal).

### 4. Threatening a Witness

Fourth, petitioner argues that trial counsel failed to object to the charge of threatening a witness, as petitioner never threatened Valona with physical harm. Petitioner indicates that

---

[5]Petitioner fails to explain how counsel could have objected to Valona's testimony. Witness credibility is tested through cross-examination. It is also unclear how counsel could have made more of Valona's false affidavit without appearing to admit that petitioner committed the offenses charged in counts one and two. Petitioner himself filed the Valona affidavit in support of the § 2255 motion attacking the ACCA sentence.

his statement about "a rat in prison" was only friendly advice, never meant as a threat.

Petitioner fails to explain how counsel could have objected to the charge in count three. Once the grand jury has handed up a legally sufficient indictment, a defendant contests the evidence by going to trial, which petitioner did. Counsel argued to the jury that petitioner did not intend to threaten Valona (Trial Tr. at 379, 384), but the jury nevertheless convicted.

### 5. Change in Counsel[6]

Petitioner next indicates that, after the trial, his lawyer withdrew and new counsel was appointed. He indicates that the new lawyer was unfamiliar with what happened at trial and did not have enough time to get up to speed before sentencing.

The record refutes these claims. Trial counsel withdrew on May 17, 2013 (R. 57), and successor counsel was appointed on May 23, 2013 (R. 58). On July 1, 2013, I set the case for sentencing on August 26, 2013. (R. 59.) Successor counsel ordered the trial transcripts, which were filed on July 30, 2013. (R. 60, 61.) Successor counsel did not request an adjournment, he filed detailed objections to the PSR (R. 65-1), and he appeared prepared for sentencing on August 26, producing a witness to speak on petitioner's behalf (R. 78 at 8) and presenting a thorough, well-informed argument (R. 78 at 9-13). Petitioner does not (in this claim) identify anything more successor counsel would have done if given more time.

### 6. Sentencing Argument

Finally, petitioner argues that he was prejudiced by the change in counsel between trial and sentencing because certain pertinent issues were not raised at sentencing or on his direct appeal. The only specific issues he mentions are counsel's failure to challenge the

---

[6]In the motion, this claim is also labeled "ground four." (2255 Motion at 9.)

miscalculation of his sentencing guideline range and to file a petition for certiorari in the U.S. Supreme Court.

On the first issue, petitioner contends that the PSR used his previous ACCA sentence, which is now an illegal sentence under <u>Chambers</u> and <u>Begay</u>, to calculate his range in the present case. The PSR applied the cross reference in U.S.S.G. § 2J1.2(c), which set the offense level in this case 6 levels lower than in the ACCA case. <u>See</u> U.S.S.G. § 2X3.1. Even assuming, <u>arguendo</u>, that counsel should have challenged the guideline range on this basis,[7] petitioner overlooks the fact that I also adopted an alternate guideline calculation, which produced the same offense level of 27, without the cross-reference to the ACCA sentence.[8] (R. 78 at 5-8.) Therefore, petitioner cannot show prejudice from any possible omission by sentencing counsel.[9] Nor, even if <u>Chambers</u> and <u>Begay</u> apply retroactively in this context, can he show any impact on his sentence in this case.[10]

---

[7]Counsel did challenge it on another basis. (R. 65-1 at 1.)

[8]I also specifically stated that the sentence was based on § 3553(a) and would be the same regardless of my resolution of the guideline issues. (R. 78 at 33.)

[9]In his memorandum, petitioner raises a due process claim that his sentence was based on false information that he made a threat to a witness. He cites <u>Shukwit v. United States</u>, 973 F.2d 903 (11th Cir. 1992), where the court of appeals allowed a defendant to raise under § 2255 a claim that the district judge failed to resolve factual challenges to the PSR. In this case, petitioner's counsel challenged the PSR's guideline enhancement for threatening a witness, and I rejected the argument. (R. 78 at 5-6.) Petitioner did not raise the issue on appeal, and he fails to now demonstrate prejudicial error in my determination. In the memorandum, petitioner also claims that his appellate counsel failed to adequately consult with him regarding the issues presented, but he fails to explain what other, stronger issues counsel should have raised on appeal. <u>See</u> <u>Blake v. United States</u>, 723 F.3d 870, 888 (7th Cir. 2013).

[10]He cannot challenge the ACCA sentence itself in this proceeding. I note that I did, in imposing sentence in this case, consider that petitioner may because of his fraud have lost the opportunity to bring a valid challenge to his ACCA sentence under <u>Chambers</u> and <u>Begay</u>. (R. 78 at 32.)

The second issue is a non-starter. A criminal defendant has no constitutional right to counsel to pursue a petition for a writ of certiorari, and where there is no constitutional right to counsel there cannot be constitutionally ineffective assistance of counsel. Wyatt v. United States, 574 F.3d 455, 459 (7th Cir. 2009).

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion is **DENIED**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that the petition to proceed in forma pauperis (R. 3) is **DENIED** as moot. There is no filing fee under § 2255.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner. In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing requires a demonstration that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Narvaez v. United States, 674 F.3d 621, 626 (7th Cir. 2011). For the reasons stated above, petitioner cannot make such a showing, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin, this 25th day of March, 2015.

/s Lynn Adelman
LYNN ADELMAN
District Judge